OPINION OF THE COURT
Howard E. Levitt, J.
This is an action alleging charges of sexual discrimination in employment in violation of section 296 of the Executive Law and the tort of abusive discharge.
In 1963, plaintiff, a married woman, became employed by defendant, a married man, as a medical technican, assistant *565 and office manager. Plaintiff alleges that from July 18,1963 to September, 1977 defendant used his “hegemonic position to importune plaintiff” into engaging in acts of sexual intercourse and deviate sexual behavior. Plaintiff asserts that compliance with defendant’s requests were a condition of continuing employment and she feared that refusal of these advances would have an adverse effect.
Plaintiff, however, admits that hegemony notwithstanding, she eventually fell in love with defendant and he expressed love for her. She further alleges that they thereafter discussed a future life together and were contemplating matrimony. Indeed, she claims that at the insistence of defendant she divorced her husband in 1973 and waived alimony.
Plaintiff asserts that, four years later, in August, 1977, she refused to have any further sexual relations with defendant, whereupon defendant told her that he would not marry her and subsequently terminated her employment in September and salary payments in December.
In a prior action based on the same facts (Fletcher v Greiner, 73 AD2d 591), plaintiff sought to recover from the same defendant damages for breach of an oral contract of lifetime employment and for fraud. The complaint was dismissed on December 3, 1979.
The within matter came before this court on a motion by plaintiff, inter alla, to strike several items from the demand for a bill of particulars and to strike defendant’s affirmative defenses. Defendant cross-moves to dismiss each cause of action in the complaint pursuant to CPLR 3211 (subd [a], par 7) and 3212, and to strike plaintiff’s demand for examination before trial of defendant’s wife, a nonparty.
The defendant has withdrawn his fourth affirmative defense of lack of jurisdiction over.his person. Therefore, plaintiff’s motion to strike the defendant’s affirmative defenses is moot as to this defense. The defenses of Statute of Frauds and Statute of Limitations are likewise striken in that defense of Statute of Frauds does not apply since there is no contractual obligation pleaded. The instant action was commenced in June, 1980 and the date of plaintiff’s discharge was in September, 1977 or in December, 1977 (since *566 plaintiff was not permitted to work in defendant’s office since September, 1977 and her claim that she was paid until December, 1977 has not been denied). Determination as to which of these dates is to apply is unnecessary since they both fall within the applicable Statute of Limitations. As a result, the defense of Statute of Limitations is likewise striken.
The defense of res judicata is also stricken. “The Court of Appeals [in Schuykill Fuel Corp. v Nieberg Realty Corp., 250 NY 304, 306, 307, and S. T. Grand, Inc. v. City of New York, 32 NY2d 300, 304] expounded the policy of this State that, where an issue was litigated or might appropriately have been litigated in a prior action, the determination in the prior action bars relitigating the issue in a subsequent action.” (Leonard Park Off. Plaza v P & P Sheet Metal Works, 46 AD2d 652, 51 AD2d 537, which barred another action by the same parties on the doctrine of res judicata.) The Court of Appeals in Matter of Reilly v Reid (45 NY2d 24, 28-29) also held that “[i]n properly seeking to deny a litigant two ‘days in court’, courts must be careful not to deprive him of one (cf. Commissioners of State Ins. Fund v Low, 3 NY2d 590, 595). Thus, claim preclusion is tempered by recognition that two or more different and distinct claims or causes of action may often arise out of a course of dealing between the same parties, even though it is not, except in refined legal analysis, easy to say that a different gravamen is factually involved (see, e.g., Smith v Kirkpatrick, 305 NY 66). A party’s choice to litigate two such claims or causes of action separately does not bar his assertion of the second claim or cause of action (see Secor v Sturgis, 16 NY2d 548, 554).” The question for resolution here is whether or not a different gravamen was the basis of the two complaints and causes of action involved herein. In plaintiff’s prior action she sought to recover damages for breach of an oral contract and for fraud. The grounds for dismissal were that the alleged oral contract of employment was barred by the Statute of Frauds (General Obligations Law, § 5-701) and that the promissory statements of actions to be performed in the future do not provide a basis for an action in fraud (Adams v Gillig, 199 NY 314). (See Fletcher v Greiner, 73 AD2d 591, supra.)
*567 The instant complaint alleges sex discrimination and the tort of abusive discharge. The gravamen set forth in the separate complaints is different and the doctrine of res judicata is unavailable. Nor does collateral estoppel apply herein. “The doctrine of collateral estoppel operates where there is an identity of issues which were actually decided on the merits in a prior action and where the parties, or ones in privity with them, had a full and fair opportunity to contest the issues” (W. L. Dev. Corp. v Thalgott, 54 AD2d 901, citing Vincent v Thompson, 50 AD2d 211).
Defendant also seeks to dismiss each of the causes of action in the instant complaint pursuant to CPLR 3211 (subd [a], par 7). A pleading, the sufficiency of which is being tested, is deemed to allege whatever can be implied from its statements by fair and reasonable intendment and the whole of it must be considered (Walkovszky v Carlton, 18 NY2d 414,419). All of the allegations for the purpose of the motion must be assumed to be true (Barr v Wackman, 36 NY2d 371, 375; Tobin v Grossman, 24 NY2d 609, 612). These principles are not antiquated for the Court of Appeals has recently reaffirmed them in Guggenheimer v Ginzburg (43 NY2d 268, 275) by stating that “[i]nitially, the sole criterion is whether the pleading states a cause of action, and if from its four corners factual allegations are discerned which taken together manifest any cause of action cognizable at law a motion for dismissal will fail”. This is so because “ [m] odern pleading rules are ‘designed to focus attention on whether the pleader has a cause of action rather than on whether he has properly [pleaded] one’ ”. (Rovello v Orofino Realty Co., 40 NY2d 633, 636.) The instant complaint meets these tests. Plaintiff’s allegations (which must be accepted as true for the purposes of this motion): (1) that defendant used his hegemonic position as her employer to influence her to acquiesce in and importuned her to engage in sexual intercourse with him; (2) that a condition of apprehension on her part was created to the effect that her employment would be terminated if she refused to engage in such sexual intercourse; and (3) that upon her refusal to continue sexual intercourse with defendant her employment was in fact terminated, constitute sexual discrimination. If true, they are violative of the *568 public policy of this State and of section 296 of the Executive Law of the State of New York, which among other provisions prohibits discrimination because of sex. As a result, the cross motion to dismiss the complaint for failure to state a cause of action is denied.
Defendant further seeks relief pursuant to CPLR 3212 and, on a motion for summary judgment, the court’s inquiry must be directed to a determination of whether the factual issues are genuine (Di Sabato v Soffes, 9 AD2d 297). “If the issue claimed to exist is not ‘genuine, but feigned, and * * * there is in truth nothing to be tried’ summary judgment is properly granted”. (Rubin v Irving Trust Co., 305 NY 288, 306, citing Curry v Mackenzie, 239 NY 267, 270.) For this purpose the court is not limited to a consideration of the pleading itself. Indeed, it is incumbent on the court to search the proof, as proffered by affidavits or otherwise, to ascertain whether it discloses a real issue rather than a formal, perfunctory or shadowy one (Kelly v Bank of Buffalo, 32 AD2d 875).
The court has reviewed the affidavits and memoranda of law submitted by the parties herein. These papers reveal that there was more involved in the parties’ relationship than was alleged in the pleadings. Plaintiff admits, “I fell in love with him * * * that prior to the discharge (the defendant) and I had deviate sexual intercourse over a period of approximately fourteen years * * * we were lovers * * * our relationship was in continuity. Defendant and I spoke of marriage. We planned our life together after matrimony *. * * the defendant has stolen my life.” Clearly, the relationship between plaintiff and defendant, long before plaintiff’s discharge, had undergone a metamorphosis from employer-employee to that of passionate lovers and the course of their lives thereafter bore the indelible imprint of that relationship.
The gravamen of plantiff’s complaint in the instant suit alleges two causes of action, one grounded on sex discrimination and the other based on the tort of abusive discharge. For the reasons that follow, defendant’s cross motion for summary judgment under CPLR 3212 is granted.
Plaintiff asserts that section 296 of the Executive Law *569 (unlawful discriminatory practices) is similar to section 2000e-2 of the Civil Rights Act (US Code, tit 42, § 2000e-2) and that both statutes are construed to prohibit sexual harassment based on sexual conduct or the refusal thereof.
Section 296 (subd 1, par [a]) of the Executive Law reads in pertinent part: “It shall be an unlawful discriminatory practice: (a) For an employer * * *, because of the age, race, creed, color, national origin, sex, or disability, or marital status of any individual, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment.”
Similarly, subdivision [a] of section 2000e-2 of the Civil Rights Act (US Code, tit 42, § 2000e-2, subd [a]) states: “It shall be an unlawful employment practice for an employer — (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual’s race, color, religion, sex, or national origin”.
Plaintiff’s reliance in this action upon these two statutes is, by virtue of the facts stated in plaintiff’s affidavit, misplaced. A review of the case law indicates that the facts presented by the plaintiff do not come within the purview of the statutes.
The stated purpose of the “Human Rights Law” is to afford an equal opportunity to enjoy a full and productive life and to obtain employment without discrimination because of age, race, creed, color, national origin, sex, or marital status (Executive Law, §§ 290,291; see City of Schenectady v State Div. of Human Rights, 37 NY2d 421). It was not enacted to afford redress for breach of promise of marriage and its after-effects which, as plaintiff has cogently revealed, lies at the root of this action.
Cases brought under this statute have involved discrimination based upon sex in regard to employment (State Div. of Human Rights v Bonny May Beauty Salons, 71 AD 2d 811), discrimination based on a disability due to obesity (State Div. of Human Rights v Xerox Cory., 73 AD2d 806), discrimination based upon a physical disability precluding *570 pensions (New York State Div. of Human Rights, 50 AD2d 535), as well as cases involving less pay for female coaches as opposed to male coaches (Matter of Kings Park Cent. School Dist. No. 5 v State Div. of Human Rights, 74 AD2d 570), discrimination based on creed and religious beliefs (Matter of Harmon v General Elec. Co., 72 AD2d 903), discrimination based upon pregnancy (Matter of Galante & Son v State Div. of Human Rights, 76 AD2d 1023), and mandatory age retirement cases (State Div. of Human Rights v State of New York, Executive Dept., Div. of State Police, 62 AD2d 617). The statute was not intended as a palliative for blighted love even when the lovers are employer and employee.
The primary purpose of the Civil Rights Act is to require employers to make employment-related determinations about their workers on the basis of each person’s characteristics, so as to render irrelevant the employee’s social, sexual, ethnic or religious background (Ste. Marie v Eastern R. R. Assoc., 458 F Supp 1147; see Griggs v Duke Power Co., 401 US 424).
It was the intention of Congress to formally regulate the disparate treatment of men and women resulting from sex stereotypes (United States v City of Buffalo, 457 F Supp 612). Specific cases under that statute involve pregnancy as a disability (Nashville Gas Co. v Satty, 434 US 136); male employees in similar positions (Matter of National Airlines, 434 F Supp 266); bias against transsexuals (Powell v Read’s Inc., 436 F Supp 369); and segregating job classifications by sex (Wetzel v Liberty Mut. Ins. Co., 449 F Supp 397).
Clearly, plaintiff has, through the facts presented on the present motions, failed to come within the purview of this statute. Her action, which she has characterized as “labor lost through force”, should more appropriately be designated, as did Shakespeare, “love’s labour’s lost.”
While claiming to set forth a cause of action grounded upon sexual discrimination, plaintiff’s charges might be more accurately described as sexual harassment (as contrasted with the facts submitted in supposed support), a recently recognized subdivision of sex discrimination (Hee *571 lan v Johns-Manville Corp., 451F Supp 1382). But recovery on a claim of sexual harassment is predicated on a finding that submission to the sexual suggestions constituted a term or condition of employment. Thus, in Heelan, plaintiff was hired in 1971 and worked until her termination in 1974. During this period her supervisor made sexual advances and demands on her which she consistently repulsed. Upon the issuance of an ultimatum of either submitting to these sexual advances or suffering termination, plaintiff chose termination and brought suit for sexual harassment.
In finding that plaintiff sustained a cause of action based on sexual harassment, the court emphasized that the Civil Rights Act is limited to “ ‘repeated, unwelcome sexual advances’ which impact as a term or condition of employment” (Heelan v Johns-Manville Corp., supra, at p 1389; emphasis supplied).
In Munford v Barnes & Co. (441 F Supp 459), plaintiff, a black woman, was hired by a white manager who subsequently began a course of conduct of making overt sexual suggestions to plaintiff which were consistently rebuffed. Finally, when told either to submit or suffer termination, plaintiff was discharged. For purposes of judging the defendant’s motion to dismiss, plaintiff was held to have stated a good cause of action.
And in Barnes v Costle (561 F2d 983) a female Government employee’s position was abolished because she refused her male superior’s sexual advances. This was held to be the type of discrimination the Civil Rights Act was designed to prohibit.
In the instant matter, plaintiff has failed to meet the requisite criteria of a cause of action based upon sexual harassment. Plaintiff, by her own admissions, supports this finding by stating that she and defendant were lovers and that their relationship included plans for a future marriage. Clearly, during most of plaintiff’s association with defendant these advances were welcome in the furtherance of their meretricious relationship. However, statutory protection is afforded only to those who repulse the sexual suggestions and advances.
Plaintiff admits that defendant “stole her life” and that relations with him are bitter. To deny defendant’s motion *572 for summary judgment on this cause of action would open the floodgates to litigation by countless employees who have emotional affairs with their superiors that subsequently turn sour.
As to plaintiff’s cause of action based on the tort of abusive discharge, New York presently does not recognize this tort (Chin v American Tel. & Tel. Co., 96 Misc 2d 1070, affd 70 AD2d 791). In Chin the court declared that the theory of abusive discharge as applied in other jurisdictions requires a balancing of the interests of the community in upholding its laws and public policies against the interests of the employer in the exercise of his or her unfettered right to terminate an employee under a contract at will (see Fr amp ton v Central Indiana Gas Co., 260 Ind 249). The elements that comprise this cause of action are (1) the existence of a public policy of a State, and (2) the violation of that policy by the defendant (Chin v American Tel. & Tel. Co., supra, at p 1075). The Chin court states that while New York did not recognize this tort it would not be adverse to adopting it when presented with a proper case. (The complaint in Chin was dismissed for failure to state a cause of action because plaintiff failed to demonstrate that public policy existed that would restrict the right of a private employer to discharge an employee at will due to the employee’s political beliefs, activities and associations.)
Plaintiff, in the instant action, relies on the recent case of Savodnik v Korvettes (NYLJ, April 28, 1980, p 3, col 1), wherein Justice Platt of the Eastern District of New York found the defendant guilty of abusive discharge. The court indicated that under the facts presented therein, New York would also probably follow the current trend and no doubt recognize the tort of abusive discharge. In that case the plaintiff ostensibly worked for over 13 years for the defendant; he received promotions and raises in salary; he was considered a model employee; and nevertheless, the defendant concededly discharged the plaintiff merely in order to avoid its responsibility to contribute to the plaintiff’s pension plan. The court held that the defendants placed themselves in the position where they acknowledged they did not in good faith abide by their own agreements. Such conduct was deemed unconscionable by the court.
*573 In the present case, plaintiff claims damages for abusive discharge, contending that defendant violated New York’s public policy with regard to sex discrimination. As already discussed, plaintiff failed to make out such a cause of action under either section 296 of the Executive Law or section 2000e-2 of the Civil Rights Act (US Code, tit 42, § 2000e-2). Thus she has not fulfilled the second requisite element to constitute a cause of action based upon abusive discharge.
Accordingly, defendant’s motion to dismiss pursuant to CPLR 3212 is hereby granted. Plaintiff’s remaining requests for relief are denied as moot.